Thank you. Good morning, Your Honors. May it please the court, Anne Barhom for the petitioners, Yenny Sanchez Martinez De Domingo and her young daughter Astra Domingo Sanchez. I would like to reserve two minutes for rebuttal. All right. This panel requested that we address two issues, exhaustion and how Ms. Chavez v. Garland affects this case. And we addressed both in our 228J letters, which this court, I'm sure, has reviewed. And we believe that the exhaustion issue has been exhausted. And if you would like me to go further into that, I'm more than happy to do that. Well, with regard to the exhaustion issue, I see that there was mention of the issue in the briefing before the VIA, but it was really in the context of the jurisdictional argument and the question of whether she was really advised of the consequences in her native language. I did not see it brought up in the context of Section 1229A1. So, if there's a citation, I know your argument time is short. So, if there's a particular citation to the brief that you'd like to point out, I can look at it after argument. Yeah, sure. She talked about in the VIA brief, it was brought up under the INA, which is actually the 1229. It's the same thing. So, there was no specific citation to the relevant section, just the INA generally is what I'm hearing from you. Is that correct? No, it goes to the actual section, the 12. She just referred to that. So, I mean, if you want me to brief that, I'm more than happy to. No, that's fine. I just did not see it in the briefing before the VIA. Yeah, granted, it wasn't the, I mean, she highlights the INA section and not, she doesn't refer to the code of, the code, but it's the same thing. All right. It's on page 26, INA 239A1. Do you want me to continue? Please. Okay. So, in this case, we're pretty much looking at the elephant in the room, which is whether or not the MTA is properly filled out by the government when it's first given to the petitioner in this case. As we noted in the briefs, both in the BIA brief and in the brief for this court, the notice to appear did not contain the location, time, or place when it was served on the petitioner when she was in detention. In fact, the MTA notice to appear showed the Miami court as the place for the immigration proceedings to take place and said the time and place was to be determined. I think in Ms. Chavez, Justice Gorsuch really closed the door on this two installment theory that some circuits like to employ or address, thinking that the second notice hearing would somehow cure a defective MTA. But Gorsuch, Justice Gorsuch said, no, that is not the case. So, in the petitioner's situation, they were issued a removal order in absentia, and that removal order was based on the MTA, which was improperly filled out and served on the client while they were in detention. And I have to note that both, I mean, the lead petitioner in this case is from Guatemala, she's indigenous, she's illiterate, and she speaks non-English. So, to expect someone, anyone, frankly, to be able to understand what the government is doing is incomprehensible to me. Now, in Ms. Chavez, Justice Gorsuch follows along the same line of thinking as Justice Sotomayor said in Pereira, that they apply, the court applies the statute as it is written. It's as clear as the nose on my face what 1229A says and what needs to be done. I don't think there's any argument. Well, let's assume that you're right and that your Pereira argument, Pereira-based argument is exhausted and the notice to appear somehow defective. There doesn't appear to be any dispute that she did receive notice under 1229A2, right? The provision that talks about if there's a change in location or time, then she gets a new notice. I mean, that's, that notice she did receive, and there was no defect with regard to that. Well, she received a notice of hearing. She didn't receive a new NTA. There's a difference. So, in the first NTA, it cites to the Miami court with a date and time to be determined. I think it's just sloppy on the part of the government to expect anyone, any individual, to assume that that's, that's proper. And so does the document. Justice Gorsuch really emphasizes this point that when you serve a notice to appear in a grave legal proceeding, it has to be correct. It can be amended later, no question. But it's not correct in this case. And it never was amended. And the government just has gotten away with this sloppy kind of behavior for far too long. And Justice Gorsuch says that. So, I think this court should vacate petitioners in absentia removal order and terminate proceedings. And the government is perfectly capable of issuing a new NTA in this case, which if they want to, they can. They have just chosen not to do that. And Justice Gorsuch basically doesn't, you know, follow that line of thinking. So, Nez Chavez, while they're talking about the stop time rule, it doesn't limit that ruling in Nez Chavez to just the stop time rule. I think it opens the door to question lots of other things, including an in absentia removal order, which is directly tied to 1229A1. All right. You're almost down to a minute. So, would you like to save at this time? Yes. Yes, Your Honor. Thank you very much. All right. Mr. Kelly. Your Honor. Thank you. Your Honors, and may it please the court, my name is Richard Kelly for the Attorney General. First, I want to address jurisdiction as it relates to Nez Chavez, and then I'll turn to in absentia notice and exhaustion issues. So, just very quickly, or briefly. Can I ask a question that is not related to the legal issues here, but I can't have to say, disturb me. As I understand it, this lady showed up two days late because she had a misunderstanding about the date. And the reaction to that of your agency was, screw you, you're out of here, you've lost. If that had happened in a district court, it would have been the subject of immediate reversal by most courts of appeals. Why does your agency get off with such high-handed behavior? Your Honors, I will definitely, I will not dispute the fact that the underlying facts are not sympathetic in this case. I think that's clear. However, the law is the law. And so, what this court has decided in Valencia for Grosso v. INS and Sharma v. INS is that the petitioner has to show extraordinary circumstances related to their failure to appear. So, in Valencia, the petitioner arrived four and a half hours late to their hearing. In Sharma, the petitioner arrived one hours late. Those circumstances, and none of those cells did not rise to an exceptional circumstance. So, I think in this case, the board was just applying that circuit law. Well, you're right to make mention of that. It leaves me totally nonplussed that this is the way you say the law is the law. Actually, I think the law is what the Supreme Court says it is, which brings us to the recent decision. Why isn't that dispositive against you? Yes, Your Honor. First, in terms of jurisdiction, similar to Pereira, the only issue before the court was interpretation of the stop time rule in 1229BD1A. So, the court did not opine on jurisdiction. The court did not argue with the dissent's proposition that the government can initiate proceedings with two-step notice. The court has categorically denied petitions for certiorari in every case, both before and after Nesh Chavez, to raise the jurisdictional issue. So, at this point, it's really not colorable that that case, just as in Pereira, cannot stand for a broad jurisdictional proposition. There's a problem beyond the jurisdictional issue, and that's the failure to comply with the notices in connection with the inabstentious statute. Because the inabstentious statute only applies to an alien who, after written notice, required under paragraph 1 or 2 of section 1229A of this title, has been provided to the alien or the alien's counsel of record. So, it ties back to precisely the statutory definition of the NTA that the Supreme Court construed in Nesh Chavez. So, that seems to say that this triggering criterion for the inabstentious statute wasn't met, and therefore, the proceeding is invalid. Well, Your Honor, first I would just like to reiterate our position is that that issue is unexhausted, but considering that question. Let's go then to the exhaustion issue, because they point to two places in their brief at AR 28 and AR 30, and 28 clearly has the assertion that the NTA was defective for precisely the reasons that Nesh Chavez addressed. So, that argument is on page 28 in the context of the jurisdictional issue. Now, then on page 30, they go to the notice issue, and in the very first sentence, they say, Respondents then argue that they did not receive proper service of the hearing and consequences of the failure to appear, as required under the Immigration and Nationality Act. Now, then, most of the ensuing discussion is about the MAM language issue, but are you saying that when they have the two elements there, the NTA was defective, it didn't comply with the statute in the jurisdiction section, and then they say the notice didn't comply with the statute. Are we going to play some sort of Simon Says game that says, Aha, you didn't link the two together. They're both there, but sorry, gotcha. Is that how we're to construe this, or do we construe this a little more generously? No, Your Honor, because I think the key difference here is the inabstantial provisions are in the statute, but as the court decided in Aguilar-Furman, the jurisdictional provisions are in the regulations. So, in order to challenge a notice claim for inabstantia, you have to bring a claim under 1229A.B.5.C.2. That is mentioned nowhere in their argument, so the board was not on notice. Essentially, that claim was being used to try to rescind for lack of notice. They were only challenging the jurisdiction. Correct, Your Honor, it is correct that there are some overlaps between the arguments, just because they both do involve notice to appear. So, the substance of the C.2. argument is there, but because they didn't say C.2., it's not exhausted? Well, no, Your Honor, I don't think, because the board has already spoken on the inabstantial notice issue in the matter of Pena-Mejia, so it has already interpreted that provision. So, it's a different argument, it's a different claim, because the reason is the wording of that statute, as you stated, is phrased in the disjunctive. So, the inabstantial provisions are triggered if someone receives 1229A.1 notice or 1229A.2 notice. Now, that is strikingly different from the statute in Nez Chavez, which only required a notice to appear under Section 1229A. So, that use of the disjunctive is what the board relied on to answer that question. So, I think the court should defer to the board's interpretation, which is not abrogated by Nez Chavez. In order to, and also within the jurisdictional provisions, the standard would have to be clearly irreconcilable with prior second precedent for a Supreme Court decision to abrogate it. And in this case, because the Supreme Court was not purporting to do anything more than interpreting the stop-time rule, there's no way it could be construed as abrogating the inabstantial provision, this court's or the board's decision on inabstantial provisions. And that's also the position held by the Sixth Circuit, who has also considered the issue post-Perera. So, correct. So, right. So, your position is that the notice of the change of the date and place of the hearing is a notice under Paragraph 2, and that, therefore, that's sufficient to trigger the inabstantial even if there wasn't a valid NTA? Correct, Your Honor. Right. Because, right, Maduro-Pena-Mejia is consistent with Nez Chavez. It says if a person does not receive a 1221-A1 compliant notice, then inabstantial can still be brought under A2 if they received an A2 compliant notice. And Nez Chavez goes on to say that 1229-A2 is a different document. It's a notice of hearing that contains time, place, or location of information. So, nothing in that decision can be read as stating that the inabstantial provision only requires one certain kind of notice. So, I think that just by the plain language of the statute, I think the board's interpretation is reasonable. The petitioner hasn't really argued otherwise. So, the court, if it reaches the issue, should defer in this case. And then, also, the dissent, I want to also point out, the dissent sort of discusses the inabstantial provision of 1229-AB5-A in Nez Chavez. And it uses the term written notice, which is broader than what is used in the stop time rule, which is a notice. So, the Supreme Court stressed that the countable version of the word in the stop time rule, a notice, suggests that it requires one document. However, because the uncountable version of the word is used in the inabstantial provision, that implies more, it can be more documents, essentially. So, it can be A1 or A2, and it would be consistent with Nez Chavez's reasoning, if that makes sense. And then, right, so this court has already spoken on the jurisdiction. Aguilar-Ferman confirms that the regulations define how to bring the claim, the jurisdictional provisions, in terms of claim processing rules. So, that is not up for debate, because Nez Chavez did not affect that. It did not mention any of the agency's regulations in its decision. So, I think the court should take this opportunity to kind of clarify the effect of Nez Chavez on jurisdiction. And, again, if it finds the issue exhausted, then I think the inabstantial notice should be deferred to, based on the agency's position. If there are no further questions, Your Honor, I submit. Thank you. It doesn't appear that we have any further questions, but as you may already know, the Ninth Circuit has a pretty robust mediation program with very skilled mediators, and I'm not asking for any commitment right now if you're not ready to do that, but I noticed that in recent calendars, the government has, on some occasions, affirmatively asked that a case be put into mediation, and in some cases, there have been a joint request for mediation. I don't know whether there's been any consideration given to that, and then, so the parties might want to think about what your positions are as to whether it's appropriate for this case. Certainly, Your Honor. Thank you, Mr. Kelly. Your Honor, if I may, I think the government is trying to wiggle out of what is clearly, plainly stated in Chavez and also in Carrera. Well, but counsel raises a nuance about the difference in wording in B5A because it refers to either of two different types of notices, but that kind of underscores that maybe you didn't raise this issue with the clarity that it needed to be raised at the agency so that it could see precisely that this claim was in front of it and address these kinds of nuances. You didn't really do that. Well, Your Honor, I think it's pretty clear that we raise the fact that the NTA was not proper, that the date and time and location were not there. Correct, but his argument is that a defective NTA is not alone dispositive of whether the trigger in B5A is met because there's an alternative way of satisfying it. And because this issue was never specifically raised, that kind of issue in detail was never presented to the agency, so we don't have any input from the agency in this case on how to read any of that. So doesn't that say it's not exhausted? Well, I think you can generally talk about certain things, and then the devil is always in the details later, and it was addressed more directly in this brief before you for the Ninth Circuit. I will point you to the government's own regulations in 1239.1 where it says every removal proceeding conducted under 8 U.S.C. 1229A to determine the deportability or inadmissibility of an alien is commenced by the filing of the notice to appear with the immigration court. This notice to appear for petitioners was defective. Right, but as I understand the government's argument, under 1229AB5A an abstention removal order is permissible after written notice of either under Section 1 or Section 2 notice, and the Section 2 notice is 1229A subsection 2. That doesn't even appear to be a dispute in this case that she did properly receive notice. So if you read that in the disjunctive the way the government does, that you can either receive notice under subsection 1 or subsection 2, that does not create problem on the merits for your case? Under the exhaustion doctrine, you can allude to problems. Obviously, this is a problem, and this is a due process issue as well. She was not properly given. So if exhaustion does provide some leeway, the Ninth Circuit has been pretty generous in looking at these immigration issues without being such a stickler that it has to do X, Y, and Z. In fact, the government only cited an unpublished memorandum when they were talking about the exhaustion issue as their authority, which is no authority at all. And we cite two cases, Martinez v. Barr and Bair v. Barr. So, you know, I'm a little bit at a loss for understanding how the government can wiggle out every single argument. And if this court finds that the issues were not exhausted, I'm more than surprised. All right. Thank you very much, counsel, both sides, for your argument today. Our questions took you over time. So at this point, the case is submitted, and we'll issue a decision in due course. Thank you.
judges: Nguyen, Rakoff, Collins